# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4040 | **DATE** | 12/8/2000 |
| **CASE TITLE** | Zapata Hermanos Sucesores, vs. Hearthside Baking Co., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. In summary, Lenell's three motions in limine are granted in part and denied in part. (41-1, 41-2, 41-3) Zapata's motions in limine are granted. (38-1, 39-1, 40-1) This action is set for trial to begin at 9:30 a.m. January 29, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | FILED FOR DOCKETING 00 DEC -8 PM 4:09 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/8/2000 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZAPATA HERMANOS SUCESORES, S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99 C 4040 |
| | ) | |
| HEARTHSIDE BAKING CO., INC., etc., | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED DEC 11 2000

## MEMORANDUM OPINION AND ORDER

This action has reached the readiness-for-trial stage: With the parties having provided this Court with a revised final pretrial order ("FPTO") in response to its comments on the litigants' original jointly proposed form of that order, all that remains is to rule on their respective motions in limine and to set a trial date. This memorandum opinion and order first addresses the three motions in limine that have been submitted by defendant Hearthside Baking Co., Inc., d/b/a Maurice Lenell Cooky Co. ("Lenell") and then turns to the three motions in limine submitted by plaintiff Zapata Hermanos Sucesores, S.A. ("Zapata," successor by merger to original plaintiff Envases de Hoja de Lata, S.A. de C.V.). Each side has responded to the other's motions, so that all are ripe for decision.

### Lenell's Motions

#### Economic Effect of the Litigation

In response to Lenell's concern as to a play for sympathy on

Zapata's part,[1] Zapata agrees that it will not offer "any reference pertaining to the pecuniary position of the parties or any comment regarding the effect of the judgment on any party as it relates to any economic hardship, wealth or poverty." But Zapata properly says that the prohibition must cut both ways. It is right, and this Court so orders.

Settlement Offers

Again Zapata's response is persuasive--this time in distinguishing properly, as does Fed. R. Evid. ("Evidence Rule") 408 itself, among the purposes for which evidence of settlement offers or attempts to compromise is excludable. In that respect such offers or compromise efforts made after suit was filed on June 17, 1999 will not be admitted "to prove liability for or invalidity of [Zapata's] claim or its amount" (Evidence Rule 408).[2]

But as Zapata describes the parties' discussions antedating

---

[1] Long gone are the days when a Daniel Webster could move the Supreme Court--and, as is reported, could move listeners to tears--by his peroration in Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518 (1818):

> It is, Sir, as I have said, a small college. And yet there are those who love it!

[2] Zapata also asserts that Lenell has never made anything that constitutes a settlement offer (as distinguished from a demand that Zapata drop its claims), so that "there is nothing to introduce or preclude." This Court has no way of knowing whether that is accurate, but it is irrelevant in light of the ruling in the text.

2

the lawsuit, those were not within the purview of Evidence Rule 408 at all. For one thing, they were not really compromise negotiations--instead they were collection efforts. And for another, they are probative for purposes other than to prove Lenell's liability or the specific amount of that liability.

Hence Lenell's motion is granted only to the limited extent that it relates to any actual compromise negotiations that may have taken place after this action was filed. In all other respects it is denied. Any further particularization of this ruling will be addressed at trial as and when individual items of evidence are sought to be offered and may then be objected to.

## Malnove Litigation

Zapata also musters convincing arguments against the exclusion of any evidence regarding Lenell's unsuccessful defense in Malnove v. Hearthside Baking, 95 C 4861. Again Lenell's attempt to invoke an evidentiary rule--this time Evidence Rule 404(b)--seeks to burden that rule with more baggage than it can carry.

Zapata's response makes it clear that its contemplated introduction of evidence as to the Malnove litigation, which involved Lenell's unsuccessful effort to stiff a different supplier, is not offered as "bad man" evidence--that is, as mere propensity evidence to show that having sinned once, Lenell is assertedly more likely to have sinned again. Instead Zapata's

showing of the evidence's relevance for one or more other purposes--purposes that Evidence Rule 404(b) itself confirms can support admissibility--is both cogent and persuasive.

Nor does Evidence Rule 403 operate to trump such admissibility. To be sure, the evidence at issue is bound to be prejudicial to Lenell in the same limited sense that <u>all</u> evidence, to be relevant (and hence admissible) at all, must be prejudicial to the party against whom it is admitted. But Evidence Rule 403 speaks not of prejudice but of <u>unfair</u> prejudice, and for the reasons explicated by Zapata such unfairness is not at all present in the admission of the disputed evidence.

For the several reasons stated in Zapata's response, then, the <u>Malnove</u> litigation and its outcome are fair game for introduction into this lawsuit. As with the prior motion, the specifics of such admissibility may await the trial.

<u>Zapata's Motions</u>

<u>Stricken or Unpleaded Matters</u>

In this motion Zapata seeks to bar categories of evidence that it packages in three categories:

    1. evidence related to stricken damages and defenses;

    2. evidence related to unpleaded claims for damages; and

    3. evidence related to unpleaded defenses.

4

Each of those matters will be considered in turn.

As to the first of those, Lenell agrees that it will not seek to go into any claimed infringement of its trade dress, trademarks, copyrights or other intellectual property, nor will it advance any claimed breach of fiduciary duty. But despite this Court's refusal to have permitted a late-advanced second amended complaint asserting Zapata's alleged failure to deliver to Lenell certain artwork or related items (a claim that is now the subject of a separate lawsuit by Lenell before another judge), Lenell urges that the exclusion of such evidence from this case would severely prejudice its defense here. As Lenell has it, such nondelivery is relevant as a reason for its nonpayment of the amounts due to Zapata for merchandise.

Baldly framed in those terms, it would seem likely to inject into this lawsuit the question of Lenell's right or lack of right to those materials--the hotly contested issue that will be tried in the separate lawsuit. Again this Court is not prepared to add a trial within a trial to this litigation. For the present, Zapata's motion is granted, although this Court is willing to listen to any proposal by Lenell that would enable it to advance that reason for its nonpayment without giving it an unwarranted Good Housekeeping seal of approval.

As for evidence regarding unpleaded damages, Lenell responds that it has no intention of going beyond what has been identified

in the FPTO. This Court reads that response as an agreement to the granting of the motion.

Finally, as to evidence in support of unpleaded defenses, Lenell claims a lack of clarity. But the short answer is that such a motion is well-founded and is granted, though it is of course possible that individual rulings may have to be made at trial as to what fits within the barred description.

Unidentified Deficiencies in Zapata's Goods;
Unidentified Payments by Lenell

Although this Court reads Zapata's second motion in limine as straightforward in both its scope and its purpose, Lenell's claimed response does nothing more than muddy the waters. All that Zapata asks is that Lenell be precluded from advancing any contentions that have not been disclosed during the discovery process in two categories--any asserted deficiencies in Zapata's deliveries of merchandise to Lenell, and any asserted payments by Lenell that it has not previously identified. To deny that motion would be to subvert the entire purpose of discovery, as contrasted with the old sporting or fox-hunt approach to litigation. That motion too is granted.

Additional Terms and Conditions of Purchase

Here Zapata points to Lenell's consistent position throughout the discovery process as to what constituted the parties' agreement regarding the terms and conditions under which they were carrying on business--consistent, that is, until Lenell

6

sought to assert late in the day that the reverse side of some of its purchase orders contained some provisions that became part of the parties' contractual arrangement. Lenell's response appears to dodge the issue posed by the undisputed fact that its answers during the discovery process were detailed and contained no such assertion. Lenell will not be permitted to shift ground at this late date, which is not only post-discovery but is also essentially on the eve of trial. Again Zapata's motion is granted.

## Conclusion

In summary, Lenell's three motions in limine are granted in part and denied in part. That relating to the economic effect of the litigation is granted on condition that its prohibition applies to both parties. That relating to settlement offers is granted to a limited extent, but is denied in principal part. And that relating to the <u>Malnove</u> litigation is denied.

As for Zapata's motions in limine, all three are granted for the reasons previously stated here. To the extent that Lenell has characterized any of the Zapata motions as unclear or overbroad, it will make more sense to address any particularization in the environment of the trial itself.

Finally, this action is set for trial to begin at 9:30 a.m. January 29, 2001. Each party is ordered to tender its proposed jury instructions by a filing in this Court's chambers on or

before January 15 (to that end, counsel are urged to confer between themselves well in advance, so that they can maximize the extent to which instructions may be tendered on an agreed basis, correspondingly minimizing the number of disputed instructions). Shortly before January 29 this Court's minute clerk will communicate with counsel about the scheduling of the pretrial voir dire conference.

_____
Milton I. Shadur
Senior United States District Judge

Date: December 8, 2000