Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4040 | **DATE** | 8/22/2001 |
| **CASE TITLE** | Zapata Hermanos vs. Hearthside Baking Co | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. It is not at all clear from Zapata's submissions how much less it assertedly would have had to spend in lawyers' fees and expenses in this litigation if the Law Firm had done the right thing - - if it had caused its client to acknowledge the legitimacy of a large part of Zapata's claim. This litigation would still have proceeded in that event, and Zapata has not sought to quantify its potential claim under Section 1927. This Court will therefore await any further input on that subject.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 2 4 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 94 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8/23/2001 | |
| | | date mailed notice | |
| SN | courtroom deputy's initials | 01 AUG 23 AM 11: 12 | |
| | | Date/time received in central Clerk's Office | SN mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZAPATA HERMANOS SUCESORES, S.A., )
)
               Plaintiff, )
)
v. ) No. 99 C 4040
)
HEARTHSIDE BAKING CO., INC., )
etc., )
)
               Defendant. )

## MEMORANDUM OPINION AND ORDER

After having prevailed in principal part before the jury that heard the litigants' major commercial dispute, Zapata Hermanos Sucesores, S.A. ("Zapata") has moved for an award of attorneys' fees on three alternative grounds, two of them advanced against defendant Hearthside Baking Co., Inc., d/b/a Maurice Lenell Cooky Co. ("Lenell") and the third advanced against Lenell's litigation counsel, Gordon & Centracchio, L.L.C. ("Law Firm"). Timothy Touhy, who had acted as co-counsel with the Law Firm during the litigation, has filed a response to the motion on Lenell's behalf, while the Law Firm has filed a responsive memorandum (cited "Mem.--") in its own right. This memorandum opinion and order deals with the Law Firm's situation[1].

---

[1] This Court's minute clerk had earlier relayed to the litigants a request for submission of a reply memorandum by Zapata's counsel as to its entire motion for fees. But a further in-depth review of the submissions bearing on the Law Firm's responsibility has confirmed that nothing more is needed in that regard. Hence this Court will await a reply that is limited to

In that respect Zapata looks to 28 U.S.C. §1927 ("Section 1927"), which applies when an attorney "multiplies the proceedings in any case unreasonably and vexatiously" and is consequently required "to satisfy personally the excess cost, expenses, and attorney's fees reasonably incurred because of such conduct." Although our Court of Appeals had earlier given somewhat different signals as to the nature of the misconduct required for sanctionability under that provision,[2] it announced more than 15 years ago that the standard was the same objective (not subjective) bad faith test that applies under Fed.R.Civ.P. ("Rule") 11 (In re TCI, Ltd., 769 F.2d 441, 445 (7th Cir. 1985)). And it has adhered to that position in a number of cases since then--see, e.g., Ordower v. Feldman, 826 F.2d 1569, 1574 (7th Cir. 1987); Walter v. Fiorenzo, 840 F.2d 427, 433-36 (7th Cir. 1988); Kotsilieris v. Chalmers, 966 F.2d 1181, 1184-85 (7th Cir. 1992).

It is certainly true that Lenell did not comport itself in accordance with the Golden Rule: It (like Zapata) would have been outraged if one of its customers, who knew that it owed Lenell well over a half million dollars, refused to pay even a

---

Zapata's claim against Lenell itself.

[2] Mem. 2 somewhat misleadingly refers to opinions going back to 1983 and 1984, before our Court of Appeals issued the TCI opinion cited next in the text, a standard to which that court has adhered ever since.

2

nickel because the precise amount of its obligation had not been established. And it is unquestionably true as well--as this Court commented at one point during the course of the litigation--that the Law Firm was a "willing handmaiden" in Lenell's stonewalling efforts.

That alone does not of course suffice for an award of Section 1927 sanctions. As this Court held in orally denying Zapata's motion for summary judgment as to part of its claim for which Lenell had no defense,[3] Zapata was the unfortunate victim of the long-established doctrine that an enforceable judgment cannot be obtained for a <u>part</u> of a claim that is not sufficiently discrete to support a Rule 54(b) determination. If then the Law Firm had done no more than to advise its client as to its legal ability to avoid payment without incurring an enforceable judgment, that could have been viewed as acceptable lawyering-- law and morality are not after all synonymous.

But Zapata has identified more that may be placed at the doorstep of the Law Firm. Even though Lenell had responded to Zapata's request to admit that it had received, accepted and used

---

[3] At that time Lenell's own statement of account showed an outstanding balance of over $600,000 owed to Zapata (see this Court's July 6, 2000 memorandum order). And Lenell did not pay a cent toward that obligation even though the business relationship between the parties had ceased early in 1999, eliminating even Lenell's less-than-specious "excuse" that it held back payment to assure that Zapata would continue to provide cookie tins in accordance with Lenell's purchase orders.

3

virtually all of the tins for which Zapata was seeking payment, the Law Firm filed an answer that generally denied <u>any</u> liability to Zapata--an answer that it never amended. As Zapata further points out, it was only during opening statements at trial that attorney Centracchio finally acknowledged that Lenell "probably" owed "some" money to Zapata. And even that acknowledgment was the subject of crawfishing by the Law Firm's submission of proposed jury instructions that essentially sought to deny liability. That conduct is of a nature comparable to the failure of counsel to dismiss claims that are no longer viable (see, e.g., the cases cited in <u>Dahnke v. Teamsters Local 695</u>, 906 F.2d 1192, 1201 n. 6 (7th Cir. 1990); <u>Samuels v. Wilder</u>, 906 F.2d 272, 275 (7th Cir. 1990); <u>Burda v. M. Ecker Co.</u>, 2 F.3 769, 777-78 (7th Cir. 1993)).

Law Firm's Mem. 8-10 seeks to distinguish those cases on the ground that they sanctioned lawyers' failures to dismiss claims once it was clear that the claims were without merit, while the situation here involved Lenell's failure to make good on any part of the admitted portion of its obligations covered by a very large number of Lenell purchase orders and Zapata invoices. That is frankly a distinction without a difference--it is just as irresponsible, and just as much an exhibition of objective bad faith, for a lawyer to continue to resist an unequivocally legitimate claim against a client when it is clear that the

4

client owes the money. It is true that the precise accounting was difficult and that there were a number of invoices that were in dispute (as well as some items that formed the subject matter of Lenell's counterclaim), but none of those things arguably justified Lenell's egregious failure to pay part or all of the very large amount that could not be disputed--or importantly for present purposes, even arguably justified Law Firm's active assistance in stiffing Zapata in that fashion.[4]

---

[4] This Court said exactly that to Lenell's counsel almost exactly a year before the case went to trial in June 2001. Here is the relevant portion of the June 22, 2000 transcript in which this Court explained why Zapata's summary judgment motion had to be denied despite the large amount that was admittedly owed by Lenell (Tr. 8):

> Because it seems to me that good faith on the part of somebody in Lenell's position would call for it to pay what it acknowledges to be owed and fight over the rest. I don't know why they don't do that.
>
> And indeed, I've got to tell you that's the sort of stuff for which Section 1927 and its reference to vexatious delay seems to me to be brought into play.
>
> * * *
>
> And acknowledging that there may be a good-faith hassle about the amount that's due to Envases [Zapata's former name], given all of the things that you set out about the particulars of the invoices and the difficulty of tracking, I really do not understand why a legitimate business enterprise doesn't do what ought to be done -- and that is to say, "Okay. We admit that we owe whatever ($600,000, $400,000, whatever that is). Here it is, and let's fight about the rest because that's what lawsuits are for." Now that's something you ought to try to prevail on your client to do.

That does not get Zapata home free, however. It will be remembered that Section 1927 speaks in incremental terms, dealing with the <u>multiplication</u> of proceedings (see, e.g., <u>Pacific Dunlop Holdings, Inc. v. Barosh</u>, 22 F.3d 113, 120 (7th Cir. 1994)). It is not at all clear from Zapata's submissions how much less it assertedly would have had to spend in lawyers' fees and expenses in this litigation if the Law Firm had done the right thing--if it had caused its client to acknowledge the legitimacy of a large part of Zapata's claim (and even to pay that undisputed amount). This litigation would still have proceeded in that event, and Zapata has not sought to quantify its potential claim under Section 1927.

This Court will therefore await any further input on that subject.[3] In the meantime, it will also await the final Zapata reply memorandum relating to its claim against Lenell.

                                           */s/ Milton I. Shadur*
                                           Milton I. Shadur
                                           Senior United States District Judge

Date:    August 22, 2001

---

[3] See Appendix.

6

Appendix

It seems odd, given the fact that Section 1927 is about the multiplication of proceedings, to see that Lenell's Mem. 10-14 devotes more than four pages to a matter that occupied no more than a footnote reference in Zapata's original submission (its Mem. 14 n. 5). Zapata there mentioned, purely by way of example of instances when Law Firm had assertedly engaged in Section 1927-violative conduct on other occasions, Lenell's motion to reconsider this Court's striking of its belatedly-advanced counterclaim relating to the return of artwork.[1]

Because Zapata really did not make that Lenell motion the subject of a separate Section 1927-based demand, it is somewhat puzzling why Lenell would choose to "make a federal case out of it." In substantive terms it may be said that although the Law Firm's handling of that aspect of the case may have been problematic, it would not appear to have been such as to trigger Section 1927 liability on its own under the relevant standard.

But a few words should be added about one of the arguments made by Law Firm in opposition to that non-claim by Zapata. Law

---

[1] That rejection was expressly made without prejudice to Lenell's assertion of that afterthought counterclaim in a separate action. It has indeed done so, and so nothing done by this Court has operated to prevent or to delay its pursuit of that claim.

7

Firm Mem. 11-12 argues in hindsight that because some 11 months elapsed between the rejection of that added counterclaim and the date of trial, this Court should have permitted the counterclaim to be added, and that its failure to allow that was due to a misapprehension as to the posture of the case. That is dead wrong:

1. With the parties then being enabled to concentrate their efforts on the original issues in the case, discovery was completed in quite short order, permitting all of that to be done and the final pretrial order to be completed in about four months.

2. Once the final pretrial order was jointly presented by the parties and approved by this Court, the case was ready for trial at any time.[2] Several months did then intervene before trial, but that was the result of the lawyers having to mesh their own schedules with the availability of their clients and with other demands on this Court's calendar.

Importantly from a substantive point of view, this Court expressly brought to counsel's attention, in connection with its determination that the new counterclaim should be dealt with separately rather than belatedly injected into the case, the

---

[2] Indeed, Lenell did not present its motion to reconsider this Court's striking of the late-tendered counterclaim until after the final pretrial order had been fully revised for entry by this Court on the same date.

8

Supreme Court's decision in <u>Curtiss-Wright Corp. v. General Electric Co.</u>, 446 U.S. 1 (1980). Under the authority of that decision, the original disputes between the parties could proceed to a final and enforceable judgment of the type that has been entered here, even though a counterclaim of the type that Lenell was trying to shoehorn into the litigation remained unresolved. And that of course was another reason that supported the separate treatment of the afterthought counterclaim as the subject of a different action.