# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4040 | **DATE** | 2/12/2002 |
| **CASE TITLE** | Zapata Hermanos Sucessores vs. Hearthside Baking Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order.  Plaintiff's motion to bar testimony of Michael J. O'Rourke is granted in part and the remainder of the motion remains under advisement.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | FEB 1 3 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 115 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 2/12/2002 | | |
| | | courtroom deputy's initials | date mailed notice | | |
| SN | | | SN | | |
| | | | mailing deputy initials | | |

U.S. DISTRICT COURT
CLERK
02 FEB 12 PM 4: 15

Date/time received in
central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZAPATA HERMANOS SUCESORES, S.A.,      )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )    No.  99 C 4040
                                      )
HEARTHSIDE BAKING CO., INC.,          )
etc.,                                 )
                                      )
                    Defendant.        )

DOCKETED

FEB 1 3 2002

## MEMORANDUM OPINION AND ORDER

        In connection with the continued motion by Zapata Hermanos
Sucesores, S.A. ("Zapata") to recover certain attorneys' fees and
expenses that it has paid and incurred in connection with the
completed litigation between the parties, the evidentiary hearing
to resolve matters that remain at issue (based on the parties'
most recent submissions) has been set for its expected completion
on February 14, 2002.  In the meantime Hearthside Baking Co.,
Inc. d/b/a Maurice Lenell Cooky Co. ("Lenell") has filed its
Memorandum of Law (cited "Lenell Mem. --") in response to
Zapata's motion and supporting brief (cited "Zapata Mem. --")
seeking to bar testimony of Lenell's purported expert witness,
Michael J. O'Rourke ("O'Rourke").  This memorandum opinion and
order resolves that motion in part.

        To begin with, this Court (like counsel for both sides) has
reviewed transcripts of the various status hearings--November 7
and 19 and December 6, 20 and 28, 2001--during which arrangements
and procedures for the then-anticipated evidentiary hearing were

discussed. This Court agrees that Lenell had contemplated that O'Rourke would testify briefly in accordance with his two affidavits (which would appear to serve as his Fed. R. Civ. P. ("Rule") 26(a)(2)(B) written report,[1] required in light of O'Rourke's purported expert witness status), as well as his then being available for cross examination by Zapata's counsel. This Court has therefore predicated this memorandum opinion and order in terms of the matters covered (as well as the matters not addressed) in O'Rourke's October 11 and December 3, 2001 affidavits and in the "Disclosure of Witnesses" document referred to in n.1.

O'Rourke's October 11 affidavit says that he is "familiar with the usual and customary market rates charged by attorneys with varying degrees of experience in cases similar to the case entitled Zapata v. Hearthside," and it then goes on to state his views as to such "usual and customary market rates." But that approach, like Lenell's responsive Memorandum, has demonstrated O'Rourke's total failure to conform to the demands of Fed. R.

---

[1] It is unclear whether an additional document furnished by Lenell's counsel--"Defendant Lenell's Disclosure of Witnesses," faxed by Lenell's counsel to Zapata's counsel on January 17, 2002 and included as Ex. C of Zapata's motion to bar O'Rourke's testimony--is also intended to serve as part of O'Rourke's report under that Rule. For one thing, it is not signed by O'Rourke himself, as Rule 26(a)(2)(B) requires. But because that document would not make any difference to the outcome here in any event, this Court will make a pro-Lenell assumption in that respect for purposes of this opinion.

Evid. ("Evid. Rule") 702--and most particularly to the teaching

of Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), which the

Committee Note to Evid. Rule 702 confirms as having established

the definitive standard for testimony that is potentially

admissible under Evid. Rule 702 but that does not fit under the

"scientific knowledge" rubric. Both O'Rourke (in describing his

approach to the issue) and Lenell's Memorandum (in discussing the

applicable law) have totally misstated the principles that

control a case such as this one.[2]

What Lenell Mem. [2]-[3][3] seeks to do is to rely on five

opinions from our Court of Appeals: McNabola v. CTA, 10 F.3d

501, 519 (7th Cir. 1993); Cooper v. Casey, 97 F.3d 914, 920 (7th

Cir. 1996); Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir.

1993); Connolly v. Nat'l Sch. Bus. Serv., Inc., 177 F.3d 593, 596

(7th Cir. 1998); and People Who Care v. Rockford Bd. of Educ., 90

F.3d 1307, 1310 (7th Cir. 1996). But all five of those cases

---

[2] This fundamental and fatal flaw is separate and apart
from the deficiency in O'Rourke's methodology as exposed by the
"Disclosure of Witnesses" document referred to in n.1. That
document reflects a wholly insufficient effort by O'Rourke to
research and identify what would serve as the relevant market
rates even on his (and Lenell's) skewed notion of what is sought
to be ascertained in the present proceeding. Under the
circumstances, however, this opinion will not pause to
particularize the several methodological deficiencies in that
respect (on that score, see Zapata Mem. 4-5).

[3] For some reason Lenell's counsel has failed to number the
pages of his memorandum. This Court has thus had to do so
manually, and the bracketed page numbers in this opinion are the
result.

share a common factor that makes them truly irrelevant to the case at hand: In every instance the fee award at issue in those cases was dependent on a fee-shifting statute (three cases seeking an award under 42 U.S.C. §1988, one case asking for fees under ADEA and one case involving Title VII). Not one of them involved, as this case does, the sought indemnification of fees that were incurred by a party pursuant to an agreement that had been reached between that party and its lawyers entirely without reference to the prospect of a later potential recovery from the client's adversary. It is in the totally different unbilled-fee-shifting context that the cases cited by Lenell speak variously of "prevailing" market rates charged by lawyers of similar ability and experience in the community, or of "presumptive" market rates, or of using such figures as a "starting point."

By sharp contrast, this case poses the classic situation of a _true_ market rate in the sense of the price paid by a willing buyer to a willing seller--in this instance, of legal services. Zapata hired the Mayer Brown & Platt firm; the work was within the regular range of practice of the Mayer Brown litigation team; Zapata's house counsel has reviewed and approved all of the Mayer Brown billings at issue; and all of Mayer Brown's billed fees have either been paid or acknowledged by Zapata as its unconditional obligation. Under those circumstances, what our Court of Appeals has said in Balcor Real Estate Holdings, Inc. v.

<u>Walentas-Phoenix Corp.</u>, 73 F.3d 150, 153 (7th Cir. 1996)(emphasis in original) might well have been written for this case:

> Courts award fees at the market rate, and the best
> evidence of the market value of legal services is what
> people pay for it.  Indeed, this is not "evidence"
> about market value; it <u>is</u> market value.  Although
> courts interpolate the word "reasonable" into clauses
> of this kind, the best guarantee of reasonableness is
> willingness to pay.  Balcor asked Walentas to make good
> its actual outlays.  Although Walentas denies that
> Balcor got its money's worth, it does not deny that
> these were real bills that Balcor paid and it does not
> argue that Balcor's lawyers ran the meter because they
> thought that Walentas would have to cover the tab.
> Corporate inside counsel monitor bills submitted by
> outside counsel; nothing in this record suggests that
> these bills received less than the usual review.  They
> were deemed commercially reasonable and paid.  Having
> defaulted on its obligations and forced Balcor to incur
> these costs, Walentas is in no position to complain
> that it induced Balcor to incur <u>large</u> legal costs--
> especially not when the lengthy discovery into the
> negotiating history was at Walentas's insistence.[4]

Indeed, this case poses an even more unequivocal predicate for the proposition that the actual billing as rendered by the Mayer Brown firm and approved by Zapata "is not 'evidence' about market value; it <u>is</u> market value." <u>Balcor</u>, after all, involved the enforcement of a contract for indemnification by which the litigants there had substituted an indemnification agreement as to bearing the winning party's legal expenses in place of the so-called American Rule, under which each side must bear its own

---

[4]  [Footnote by this Court]  Here the counterpart to the "lengthy discovery" referred to in <u>Balcor</u> was the conduct by Lenell that converted what might have been a potentially simple goods-sold-and-delivered litigation into a far more convoluted and time-consuming (and hence far more expensive) lawsuit.

legal expenses. Such a contract might of course create the
possibility that a party, believing itself to have a dead-bang
winner, could run up the legal tab inordinately in an effort to
punish its opponent (a possibility that is glanced at in the
quotation from <u>Balcor</u>). Here Zapata had no such indemnification
undertaking from Lenell, so that nothing whatever casts a cloud
on the conclusiveness of the Mayer Brown rates as establishing
market value--not <u>presumptively</u>, but <u>actually</u>.

Nor is <u>Balcor</u> alone in establishing that proposition as
Seventh Circuit law. More recently <u>Medcom Holding Co. v. Baxter
Travenol Labs., Inc.</u>, 200 F.3d 518, 520-21 (7th Cir. 1999) has
applied the identical analysis, again in the context of an
indemnification agreement. In fact, the <u>Medcom</u> discussion has
made some additional points as to the different nature of billing
practices and procedures where a fee-shifting statute is not
involved, points that bear obvious relevance on other aspects of
the current proceeding and that this Court will take into account
at the appropriate time.

Because O'Rourke's report (even in its presently-assumed
expanded form) did not fully disclose the claimed "basis and
reasons" for his wrongheaded approach to the controlling market
rate (as Rule 26(a)(2)(B) obligated him to do), this Court has no
way of knowing whether his adoption of a principle so directly at
odds with controlling Seventh Circuit precedents was the product

6

of a deliberate decision to do so or rather of ignorance of those precedents. It is scarcely necessary to comment on the significance of the former alternative if it were indeed the case (as this Court trusts it was not). And if the latter alternative applies instead, there is really no excuse for a lawyer who holds himself out as an expert on a legal matter to be unaware of what even brief research would have disclosed.[5]

As for Lenell's counsel and his Memorandum, unawareness of the law is an unavailable excuse: Zapata's Memorandum expressly cited to and quoted from both <u>Balcor</u> and <u>Medcom</u>. Indeed, Lenell Mem. 5 (emphasis in original) essays this feeble attempt to distinguish those cases:

> The case at bar is different for two reasons. First, there is countervailing evidence of the prevailing market rate, and second, the plaintiff has not <u>paid</u> its lawyers. Even if the plaintiff's argument that a paid fee establishes the market rate is true the plaintiff cannot take comfort from it here.

As to the first purported reason, it is demolished by the <u>Balcor</u>-emphasized holding that what was billed to Zapata <u>is</u> the market rate, and not merely evidence. And as for the second purported reason, it is so ethically (and morally) bankrupt as to invite

---

[5] Some limited inquiry at the continued evidentiary hearing may perhaps cast light on the subject, and that may in turn bear on the credibility to be ascribed to O'Rourke's other assertedly expert opinions.

sanctionability.[6]

In sum, O'Rourke's proposed excursion into the hourly rates
that may be charged by some other lawyers in the legal
community--even apart from the considerations that demonstrate
the plain unacceptability of that proposed excursion under the
standards established by <u>Kumho Tire</u>, Evid. Rule 702 and its
accompanying Committee Note--is rejected as a matter of law.  At
the continued evidentiary hearing on Zapata's motion, it will be
permissible to establish a record as to O'Rourke's attempted
methodology (something that seems particularly appropriate in
light of the uncertainty as to whether Ex. C to Zapata's motion

---

[6] That nervy contention by Lenell's counsel is in the best
tradition of the son who has killed his parents and then seeks
mercy from the court because he is an orphan.  Zapata's general
counsel has confirmed during the current hearing that the only
reason any fees remain unpaid is that Zapata is suffering
financial difficulties, so that it is paying the outstanding
<u>acknowledged</u> indebtedness (presently in the amount of some
$200,000) as its cash flow permits.  It will be remembered, of
course, that Lenell stubbornly refused to pay a dime toward the
hundreds of thousands of dollars that its own books and records
showed it as owing to Zapata for goods sold and delivered--what
Lenell did was to point to some asserted disputes as to the
<u>remaining</u> portion of Zapata's claims as the predicate for
stiffing its creditor entirely.  If Lenell had even begun to do
the honorable thing by paying a substantial part (if not all) of
its <u>admitted</u> liability to Zapata, Zapata's outstanding obligation
to its law firm would long since have been paid in full.  If
anything, the argument by Lenell's counsel is rendered even more
outrageous by his stressing at Mem. 5 (emphasis again in
original) that Zapata "has failed to pay them [Mayer Brown] even
after the recovery of a judgment and attorneys' fees <u>was</u>
certain."  But Zapata still has not seen the color of Lenell's
green, for the adverse judgment has been met by Lenell with
continued stonewalling during its appeal--even as to the admitted
portion of its liability.

8

to bar is to be viewed as part of O'Rourke's report under Rule 26(a)(2)(B) and hence as a permissible component of his opinion testimony, if it were to be allowed at all).

There is another component to Zapata's motion: It also seeks to bar O'Rourke's opinions as to the reasonableness of the hours billed by the Mayer Brown lawyers. For the nonce this Court will defer ruling on that facet of Zapata's motion in order that it may better address the question whether O'Rourke has passed or flunked the <u>Kumho</u>-Evid. Rule 702 standards on that score as well, a ruling that may be facilitated by a consideration of O'Rourke's actual testimony in that respect.

Milton I. Shadur
Senior United States District Judge

Date: February 12, 2002